# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 52613-1-II |
| Respondent, | |
| v. | |
| TERYSA ANN BRAKE, | PUBLISHED IN PART OPINION |
| Appellant. | |

MELNICK, J. — Terysa Ann Brake appeals her 2018 bail jumping conviction. In the published portion of this opinion we address her argument that the 2020 changes to the bail jumping statute, RCW 9A.76.170, require vacating her conviction. We conclude that the 2020 changes to the bail jumping statute do not apply to Brake's conviction. In the unpublished portion of this opinion we address Brake's argument that the trial court erred by not finding that Brake knowingly failed to appear and by becoming a witness during Brake's bench trial in violation of ER 605 and due process. Finding no error, we affirm.

## FACTS[1]

The State originally charged Brake with possession of stolen property in the second degree. On February 12, 2018, she appeared for her arraignment. The trial court released Brake after she posted bail. The court advised Brake of her rights and notified her that she must return on April 3, 2018 for an omnibus hearing. The release order stated that Brake must "make all Court

---

[1] The following facts are based on the trial court's findings of fact following Brake's bench trial, which are unchallenged and therefore verities on appeal. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014).

Appearances as directed." Clerk's Papers (CP) at 19. The court also "advised [Brake] orally that she was required to make her court appearances." CP at 19. Brake signed the order for release with these conditions.

Brake appeared at the next three scheduled omnibus hearings, all of which the court continued at Brake's request. At the third hearing, the court issued a written order stating that "[Brake] must personally be present" at the next hearing scheduled for June 28. CP at 21.

On June 28, Brake did not appear. The court issued a warrant for her arrest. Five days later, Brake appeared before the court and moved to quash the warrant. The court quashed the warrant. Brake did not explain why she failed to appear at the omnibus hearing.

The State charged Brake with bail jumping and dismissed the possession charge. The matter proceeded to a bench trial.

The trial court found Brake guilty, entering findings of fact and conclusions of law. The court labeled one section "FINDINGS OF FACT" and the other section "RULING." CP at 18, 24. In paragraph 2 of the ruling section, the court stated:

> [T]he State is required to prove beyond a reasonable doubt that [Brake] knowingly failed to appear before the Court, having been on bail with the requirement of a subsequent personal appearance before the Court. The State has proven beyond reasonable doubt that [Brake], on bail, was released with the requirement that she personally make all future court appearances. Further, the State has proven beyond reasonable doubt that [Brake] failed to personally appear before the Court on June 28, 2018 at 10:30 a.m. for omnibus, having been advised that her personal appearance was required.

CP at 24. Brake appeals.

ANALYSIS

I.    RETROACTIVITY OF RCW 9A.76.170

We first address whether Brake's conviction should be vacated based on recent changes to the bail jumping statute, RCW 9A.76.170.  We permitted the parties to provide supplemental briefing on this issue.  Brake argues that the changes to RCW 9A.76.170 apply retroactively to her charge because her appeal is not final and for other reasons set forth below.  We disagree.

A.    Standard of Review and Legal Principles

Determining whether a statute is retroactive is a question of law that we review de novo. *State v. Schenck*, 169 Wn. App. 633, 642, 281 P.3d 321 (2012).

RCW 10.01.040 states that "[n]o offense committed . . . previous to the time when any statutory provision shall be repealed, whether such repeal be express or implied, shall be affected by such repeal, unless a contrary intention is expressly declared in the repealing act."  Moreover, statutes are presumed to be prospective unless there is a clear indication that the legislature intended a retroactive effect.  *City of Ferndale v. Friberg*, 107 Wn.2d 602, 605, 732 P.2d 143 (1987).  Thus, a statute in effect on the date of a criminal offense is the applicable statute "absent clear legislative intent to the contrary."  *In re Pers. Restraint of Flint*, 174 Wn.2d 539, 559 n.9, 277 P.3d 657 (2012).

B.    No Retroactive Intent

Brake committed her offense on June 28, 2018.  At that time, former RCW 9A.76.170 (2001) stated, "Any person having been released by court order or admitted to bail with knowledge of the requirement of a subsequent personal appearance before any court of this state . . . and who knowingly fails to appear . . . is guilty of bail jumping."

3

On March 7, 2020, the legislature amended RCW 9A.76.170. LAWS OF 2020, ch. 19, §§ 1, 2. The law took effect on June 11, 2020. LAWS OF 2020, ch. 19, §§ 1, 2.

Under the prior law, felony bail jumping required only failure to appear "before any court of this state." Former RCW 9A.76.170(1), (3) (2001). Under the 2020 law, felony bail jumping requires a person to fail to appear for trial. LAWS OF 2020, ch. 19, § 1(1)(a). The legislature also created a separate section for failure to appear for a court date other than trial and downgraded the crime to either a gross misdemeanor or no crime at all. LAWS OF 2020, ch. 19, § 2.[2] As part of the new crime of failure to appear or surrender for a non-trial court date, the State must either prove that the defendant did not appear and did not move to quash the warrant within thirty days of its issuance or that the defendant had a prior warrant issued in the case for failing to appear. RCW 9A.76.190(1)(b)(i)-(ii).

The legislature did not state that the statute would apply retroactively. Accordingly, we presume the revised statute is prospective only.

C. *State v. Ramirez*

Brake argues we should not presume RCW 9A.76.170 is prospective based on *State v. Ramirez*, 191 Wn.2d 732, 749, 426 P.3d 714 (2018), because the 2020 amendments became effective while her case was pending on direct appeal. We disagree.

*Ramirez* addressed whether the 2018 legislative amendments to the legal financial obligation (LFO) statutes applied to a case pending on direct appeal. 191 Wn.2d at 747-49. The defendant in *Ramirez* appealed the trial court's imposition of discretionary LFOs, arguing that the court had failed to make an adequate inquiry into his ability to pay. 191 Wn.2d at 736-37.

---

[2] This section has been codified as RCW 9A.76.190.

*Ramirez* concluded that the trial court had erred in imposing the LFOs without making an adequate inquiry into his ability to pay, which normally would have entitled the defendant to resentencing. *Ramirez*, 191 Wn.2d at 746. However, while the appeal was pending the legislature enacted amendments to the LFO statutes that prohibited the imposition of discretionary LFOs and the criminal filing fee on indigent defendants. *Ramirez*, 191 Wn.2d at 746. The defendant argued that these amendments applied to his appeal, and therefore the Supreme Court should strike the LFOs because he was indigent rather than remanding for resentencing. *Ramirez*, 191 Wn.2d at 746.

The court agreed and held that the 2018 LFO amendments "concern the court's ability to impose costs on a criminal defendant following conviction" and Ramirez's case was on appeal as a matter of right when the amendments became effective. *Ramirez*, 191 Wn.2d at 749. The court concluded that "[b]ecause [the LFO] amendments pertain to costs imposed upon conviction and Ramirez's case was not yet final when the amendments were enacted, Ramirez [was] entitled to benefit from this statutory change." *Ramirez*, 191 Wn.2d at 749.

Brake suggests that *Ramirez* adopted a rule of prospective application of statutory amendments to all cases pending on direct appeal. However, the court in *Ramirez* clearly limited its holding to "costs imposed on criminal defendants following conviction." *Ramirez*, 191 Wn.2d at 747. *Ramirez* did not state a rule of general application to all issues in all cases and it did not overrule precedent. We decline to adopt Brake's proposed rule on prospective application of new or amended statutes.

D.      Other Reasons for Retroactive Application

Brake next argues that the 2020 revisions to RCW 9A.76.170 apply retroactively because RCW 10.01.040 has been interpreted too narrowly by Washington courts and because the lack of

a clause relating to retroactive application renders the bail jumping statute ambiguous and subject to statutory interpretation. We disagree.

We have previously held that RCW 10.01.040 "creates an easily-administered, bright-line rule." *State v. Kane*, 101 Wn. App. 607, 618, 5 P.3d 741 (2000). There is nothing fundamentally unfair in convicting offenders "in accordance with the law they presumably were aware of at the time they committed their offenses." *Kane*, 101 Wn. App. at 618. Moreover, we have recently held that when the legislature downgrades the culpability of an offense and does not include any indication that the legislature intended the change to apply retroactively then RCW 10.01.040 applies. *State v. Molia*, 12 Wn. App. 2d 895, 904, 460 P.3d 1086 (2020). We decline Brake's invitation to construe RCW 10.01.040 differently.

We also reject Brake's contention that the statute is ambiguous and subject to statutory interpretation. Our legislature clearly did not include language that the statute was meant to apply retroactively. We decline to view this omission as an ambiguity. *See State v. Delgado*, 148 Wn.2d 723, 731, 63 P.3d 792 (2003). Moreover, "we do not have the power to read into a statute that which we may believe the legislature has omitted, be it an intentional or an inadvertent omission." *State v. Martin*, 94 Wn.2d 1, 8, 614 P.2d 164 (1980).

We conclude that there is no clear legislative intent that the 2020 amendments to the bail jumping statute apply retroactively. Therefore, the version of the statute in effect on the date of Brake's offense is the one that applies to her.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

ADDITIONAL FACTS

Mary Allen from the Kitsap County clerk's office testified. The State asked Allen to read transcripts from some of Brake's prior proceedings. The following colloquy occurred between her and the trial judge:

ALLEN: "I can do Thursday, the 28th, at 10:30."

. . . .

THE COURT: Who is the speaker of the "I can do Thursday"?

ALLEN: The court, which was Judge Bassett.

THE COURT: I'm all over this case, aren't I?

Report of Proceedings (RP) (Oct. 8, 2018) at 39.

Later, Allen again stated that the trial judge had presided over the June 28 hearing. The judge commented, "Again? I don't remember these but that's fine." RP (Oct. 8, 2018) at 42. Allen continued reading court documents, "'Then we can go ahead and call [Brake]. . . . I'll just double check to make sure. She was out on $10,000 at one point.'" RP (Oct. 8, 2018) at 42. The judge then asked, "And that's the court speaking?" Allen responded, "That's correct." RP (Oct. 8, 2018) at 42.

The following questioning then took place between defense counsel and Allen:

[DEFENSE COUNSEL:] Is it possible that that April 3rd clerk's note is erroneous as to whether or not [Brake was] in custody?

[ALLEN:] Yes.

. . . .

THE COURT: Mr. McPherson, I hope you're not intimating that I made an error in my calling and then finding [Brake] not present for the court date that is at the crux of this case.

7

[DEFENSE COUNSEL:] No, Your Honor. I'm just—I'll discuss that in argument in the future.

THE COURT: All right.

RP (Oct. 8, 2018) at 48.

Brake testified that around June 28 she was involved in a contentious dispute with her husband. However, she could not recall anything specific about events occurring on June 28.

During closing argument, the State argued that it offered transcripts and documents showing that Brake had notice that she must appear at her hearings. The judge then interjected "And fortunately I'm the one who signed most of them." RP (Oct. 8, 2018) at 71.

ANALYSIS

I.  KNOWLEDGE

Brake argues that the trial court erred by failing to make a finding that she knowingly failed to appear on June 28, 2018 and that such finding could not be made based on the evidence. We disagree.

A.  Standard of Review and Legal Principles

After bench trials, a court must enter written findings and conclusions. CrR 6.1(d); *State v. Head*, 136 Wn.2d 619, 621-22, 964 P.2d 1187 (1998). The findings must address the elements of each crime separately and indicate the factual basis for each. *State v. Denison*, 78 Wn. App. 566, 570, 897 P.2d 437 (1995). If the written findings do not address each element of the offense, and there is no evidence in the record to support the omitted findings, reversing and dismissing the charge is warranted. *State v. Alvarez*, 128 Wn.2d 1, 19, 904 P.2d 754 (1995).

"'The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt.'" *State v. Witherspoon*, 180 Wn.2d 875, 883, 329 P.3d 888 (2014)

8

(quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). A defendant's claim of insufficient evidence admits the truth of the State's evidence and "'all inferences that reasonably can be drawn [from it].'" *State v. Condon*, 182 Wn.2d 307, 314, 343 P.3d 357 (2015) (alteration in original) (quoting *Salinas*, 119 Wn.2d at 201). For a fact finder to reasonably draw inferences from proven circumstances, the inference must be rationally related to the proven fact and reason and experience must support the inference. *State v. Bencivenga*, 137 Wn.2d 703, 707, 974 P.2d 832 (1999). "'A presumption is only permissible when no more than one conclusion can be drawn from any set of circumstances.'" *Bencivenga*, 137 Wn.2d at 708 (quoting *State v. Jackson*, 112 Wn.2d 867, 876, 774 P.2d 1211 (1989)).

B.      Knowledge Finding

Brake contends we must reverse because the trial court failed to make a written finding of knowledge. We disagree.

As set forth above, bail jumping has a knowledge element. The knowledge element the State must prove is that the defendant was "released . . . or admitted to bail with knowledge of the requirement of a subsequent personal appearance." Former RCW 9A.76.170(1).

Here, in paragraph 2 of the court's ruling section, the court stated:

[T]he State is required to prove beyond a reasonable doubt that [Brake] knowingly failed to appear before the Court, having been on bail with the requirement of a subsequent personal appearance before the Court. The State has proven beyond reasonable doubt that [Brake], on bail, was released with the requirement that she personally make all future court appearances. Further, the State has proven beyond reasonable doubt that [Brake] failed to personally appear before the Court on June 28, 2018 at 10:30 a.m. for omnibus, having been advised that her personal appearance was required.

CP at 24.  The court, in writing, set forth the knowledge element and the facts that support it. This ruling satisfies CrR 6.1(d).  We next look to whether the record establishes that the State met its burden of proof.

        C.      Unchallenged Findings Establish Knowledge

The State must prove that a defendant had been given notice to appear at her required court dates.  *State v. Cardwell*, 155 Wn. App. 41, 47, 226 P.3d 243 (2010).  But the State is not required to prove that the defendant still had that date in mind on the hearing date.  *See State v. Ball*, 97 Wn. App. 534, 536-37, 987 P.2d 632 (1999) (knowledge established where defendant signed a document that set the date for his next court appearance).

In the 10 years since *Cardwell*, we have repeatedly applied its holding: to prove bail jumping, the State must prove the court gave the defendant notice of the required court date.  *E.g., State v. Boyd*, 1 Wn. App. 2d 501, 517, 408 P.3d 362 (2017) (order stating defendant's presence was required on a particular date, signed by defendant, was sufficient evidence).

Here, based on the unchallenged findings of fact, the trial court advised Brake of her rights and notified her that she must return on April 3, 2018.  The release order stated that Brake must "make all Court Appearances as directed."  CP at 19.  The court also "advised [Brake] orally that she was required to make her court appearances."  CP at 19.  Brake signed the order for release with these conditions.  Brake subsequently appeared in court on three separate occasions.  At each, she requested a continuance.  At the last one, the court set the omnibus hearing for June 28, 2018. The order stated that "[Brake] must personally be present" at the June 28 hearing.  CP at 20.  These

unchallenged findings show Brake had knowledge that she was required to appear for court on June 28.[3]

## II. TRIAL JUDGE AS WITNESS

Brake lastly argues that the trial judge violated ER 605 and her due process rights by becoming a witness at Brake's bench trial by commenting that he presided over her prior proceedings. We disagree.

### A. Legal Principles and Standard of Review

ER 605 states, "The judge presiding at the trial may not testify in that trial as a witness." This may include when the trial judge does not formally testify but inserts his or her own personal experience into the decision-making process. *Vandercook v. Reece*, 120 Wn. App. 647, 652, 86 P.3d 206 (2004). But "judges do not leave their common experience and common sense outside the courtroom door." *In re Estate of Hayes*, 185 Wn. App. 567, 598, 342 P.3d 1161 (2015).

Due process rights under the Fourteenth Amendment to the United States Constitution and article I, section 3 of the Washington State Constitution require that a defendant receive a fair trial. We review constitutional issues de novo. *State v. Vance*, 168 Wn.2d 754, 759, 230 P.3d 1055 (2010).

### B. Judge Not a Witness

It is apparent from the record that Judge Bassett was not a witness for the State. A judge who presided over a prior proceeding does not make the judge a witness in the current proceeding. We note that the judge's comments are troublesome, but he used no personal knowledge in

---

[3] Brake filed a statement of additional authority citing *State v. Bergstrom*, ___ Wn. App. 2d. ___, 474 P.3d 578 (2020), relating to properly instructing the jury regarding knowledge. Our case is distinguished from *Bergstrom* because our case involved a bench trial and the court expressly stated in its ruling that "The State is required to prove beyond a reasonable doubt that [Brake] knowingly failed to appear." CP at 24.

assessing whether the evidence was sufficient for guilt. He merely noted that he presided over Brake's prior proceedings. Whether Brake was present at the prior hearing was not a fact in dispute.[4] An impermissible comment from a trial judge is harmless when "[the] record provides overwhelming untainted evidence supporting each element of each count on which [the defendant] was convicted." *State v. Lane*, 125 Wn.2d 825, 840, 889 P.2d 929 (1995).

Because the trial judge did not testify in this matter, no ER 605 violation occurred. Similarly, because the trial judge provided no evidence of guilt to render Brake's trial unfair, there was no due process violation. Moreover, even if there was error it would be harmless because overwhelming untainted evidence showed she did not appear.

We affirm.

Melnick, J.

We concur:

Worswick, P.J.

Cruser, J.

---

[4] The State had to prove this element beyond a reasonable doubt; however, Brake never contested the fact she did not appear as ordered.